UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES HILLIARD,

    Plaintiff,

v.                                                  CASE NO. 3:13-cv-870-J-34MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

    Defendant.
_____/

### REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for a Period of Disability and Disability Insurance Benefits ("DIB"). Plaintiff alleges he became disabled on August 1, 2008. (Tr. 305.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on June 10, 2011 and again on December 16, 2011, at which Plaintiff was represented by Pamela Dunmore, a non-attorney representative.[2] (Tr. 38-151.) On February 16, 2012, the ALJ issued a decision finding Plaintiff not disabled

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

[2] Plaintiff is currently represented by N. Albert Bacharach, Jr., Esq.

from August 1, 2008 through February 16, 2012.  (Tr. 17-32.)[3]

Plaintiff is appealing the Commissioner's decision that he was not disabled from August 1, 2008 through February 16, 2012.  Plaintiff has exhausted his available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED** for a new hearing before a new ALJ.

**I.     Relevant Facts**

Olin M. Hamrick, Jr., Ph.D. testified as a psychological expert via telephone at both the initial and the supplemental hearings before the ALJ.[4]  (Tr. 40, 75, 100.)  At the initial hearing on June 10, 2011, Dr. Hamrick recommended that Plaintiff be scheduled for a psychological consultative evaluation.  (Tr. 80-81, 93-94.)  The ALJ agreed and indicated that a copy of the evaluation once completed would be forwarded to Dr. Hamrick followed by a short supplemental hearing. (Tr. 94-95, 97.)

On July 27, 2011, Plaintiff was evaluated by Allison Keiter, Psy.D.  (Tr. 392, 564-72.)  Dr. Keiter's report provided:

---

[3] Although the ALJ initially determined that Plaintiff was under a disability, the ALJ found that a substance use disorder was a contributing factor material to the determination of disability.  (Tr. 17.)

[4] Dr. Hamrick is a licensed clinical psychologist.  (Tr. 40, 100, 253.)

> Upon examination, the claimant's demeanor and responsiveness to questions were cooperative, but became more irritable. His manner of relating, social skills, and overall presentation were poor due to his lethargic appearance, mumbled speech, and irritability. . . . During the evaluation, the claimant's girlfriend may have been intoxicated. At one point during the evaluation, she passed the claimant a note. She wrote in red pen "don't answer" and passed it to the claimant. The claimant reported that he was unable to read or write. The claimant's girlfriend took the note back and later brought it to the examiner and stated that she had written "don't sleep" on the note. However, the note had been scratched out and re-written.
> . . .
> [A]t the beginning of the third subtest of the memory evaluation, the claimant stated that he was upset and felt like "throwing things." He asked if he could take a break and return to the testing. The claimant became more irritable, but was able to take a break. When he returned after five to ten minutes, he stated he would not be able to complete testing. The claimant did appear agitated and struggled to complete simple tasks. . . . The test was unable to be administered and completed. The claimant completed two subtests, both of which were in the deficient range.

(Tr. 565-67.) Dr. Keiter's Medical Source Statement ("MSS") provided:

> Vocationally, the claimant is able to follow and understand simple directions and instructions. He is able to perform simple tasks independently. He may struggle to maintain attention and concentration and a regular schedule. He will struggle to learn even simple new tasks. He has difficulties performing more complex tasks independently, making appropriate decisions, relating adequately with others, and appropriately dealing with stress.

(Tr. 567.) In the MSS of Ability to Do Work-Related Activities (Mental), Dr. Keiter opined, *inter alia*, that Plaintiff had marked limitations in the ability to carry out complex instructions and make judgments on complex work-related decisions, and marked and extreme limitations in the ability to interact appropriately with the

3

public, supervisors, co-workers, and respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 570-71.)

The results of Dr. Keiter's July 27, 2011 consultative evaluation were forwarded to Dr. Hamrick for review. (Tr. 400.) On August 11, 2011, Plaintiff's counsel, Mr. Bacharach, sent a letter to the ALJ in response to Dr. Keiter's consultative evaluation, summarizing the same and asking the ALJ to enter a fully favorable decision, or alternatively, to have Dr. Keiter complete a Mental Residual Functional Capacity ("RFC") assessment in order to fully and fairly develop the record. (Tr. 394-96.) There is no indication that the ALJ re-contacted Dr. Keiter for a Mental RFC assessment.

Instead, on August 15, 2011, the ALJ had a phone conversation with Dr. Hamrick who apparently recommended that Plaintiff be scheduled for another consultative evaluation given that he did not appear to put forth his best effort during Dr. Keiter's evaluation and may have been under the influence of an unknown substance.[5] (Tr. 107, 400.)

A Report of Contact form dated August 16, 2011 indicates that on August

---

[5] In the decision, the ALJ did not indicate that it was Dr. Hamrick's recommendation that Plaintiff be scheduled for another consultative evaluation following Dr. Keiter's evaluation. (*See* Tr. 26 ("As the claimant was considered to have not put forth his best effort during the evaluation with Dr. Keiter and may have been under the influence of an unknown substance at the time of the evaluation, the undersigned requested another consultative psychological evaluation be performed when the claimant was more clear minded and able to put forth his best effort and when he was not accompanied by his girlfriend.").)

15, 2011, the ALJ called Plaintiff's representative "but was unsuccessful." (Tr. 400.) The same form further indicates:

> [The ALJ] did reach Ms. Dunmore on 08/16/11 regarding scheduling another [p]sych[ological] [consultative evaluation] for [Plaintiff]. Ms. Dunmore was asked to inform her claimant to show up to the exam with a clear mind (not intoxicated) and be ready to put forth his best effort and that his girlfriend was not to accompany him.

(*Id.*)

On September 28, 2011, Plaintiff was evaluated by Lauren Lucas, Ph.D. (Tr. 411, 589-95.) Dr. Lucas observed Plaintiff appeared lethargic and sedated, and seemed to put forth a fair effort. (Tr. 590.) She noted the test results reflected "overall intellectual functioning within the moderate range of mental retardation." (Tr. 591.) Dr. Lucas opined Plaintiff "would appear psychologically competent to perform a routine repetitive task without sedation and also to appreciate the need for appropriate relations among coworkers and supervisors." (Tr. 592.) In the MSS of Ability to Do Work-Related Activities (Mental), Dr. Lucas opined, *inter alia*, Plaintiff would have marked limitations in the ability to understand, remember, and carry out complex instructions, and to make judgments on complex work-related decisions. (Tr. 593.)

On October 23, 2011, Plaintiff's counsel, Mr. Bacharach, sent a letter to the ALJ in response to Dr. Lucas's consultative evaluation. (Tr. 413-14.) In the letter, Mr. Bacharach asked the ALJ to have Dr. Lucas complete a Mental RFC assessment in order to fully and fairly develop the record. (Tr. 414.) There is no

indication that the ALJ re-contacted Dr. Lucas for a Mental RFC assessment.

On December 16, 2011, the ALJ held a supplemental hearing and the evaluations by Dr. Keiter and Dr. Lucas became part of the record. (Tr. 98-151.) With respect to Dr. Keiter's July 27, 2011 report, Dr. Hamrick testified in relevant part:

> I believe, Your Honor, that and my notes also indicate that you and I discussed the results of this report by telephone, and I recommended that the claimant be referred for another psychological [consultative evaluation] with admonition to show up, not under the influence of any more sedative drugs than absolutely necessary, and without the girlfriend, and to respond in a most cooperative and honest manner that he possibly could. So, you did refer him out for another evaluation.

(Tr. 107.)

On February 16, 2012, the ALJ issued his decision finding Plaintiff not disabled. (Tr. 17-32.) With respect to Plaintiff's mental limitations, the ALJ found:

> [T]he claimant has no limitation in his ability to understand, remember and carry out simple 1-2 step tasks; he has mild limitation . . . in his ability to make judgments on simple work-related decisions. He has more marked impairment in his ability to understand, remember and carry out complex instructions or make judgments on complex work-related decisions and he is moderately impaired . . . in his ability to interact appropriately with members of the general public, supervisors and co-workers (however, such interaction should be limited to an occasional or less basis throughout the work day) as well as respond appropriately to usual work situations and to changes in a routine work setting of an unskilled nature.

(*Id.*)

The ALJ gave "significant weight" to Dr. Hamrick's opinion rendered at the

supplemental hearing that Plaintiff was capable of performing simple unskilled work involving one-to-two-step tasks because it was "based on a longitudinal assessment of the evidence detailed during the hearing testimony," Dr. Hamrick "gave specific rationale for his conclusions and those conclusions [were] well supported by the other substantive evidence of record." (Tr. 30.) The other medical opinions of record were accorded less weight.

For example, the ALJ gave "very little weight" to Dr. Arie D. Breeijen's treating opinions because they were "internally inconsistent, not supported by his own cursory treatment records or the totality of the medical evidence, including the testimony offered by Dr. Hamrick." (Tr. 29.) The ALJ also gave Dr. Keiter's opinions "little weight," but "noted that Dr. Keiter found the claimant capable of simple unskilled kinds of work, consistent with the findings of Dr. Lucas and Dr. Hamrick." (Tr. 30.) The ALJ stated Dr. Keiter's "marked to extreme limitations in social functioning, however, are not consistent with the claimant's overall daily activities, including attending church and socializing with family and friends." (*Id.*) Dr. Lucas's MSS was accorded "some weight" because it was "consistent with the record as a whole as well as the assessment offered by Dr. Hamrick." (*Id.*)

## II.   Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are

supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

### III. Discussion

Plaintiff argues the ALJ's *ex parte* communication with Dr. Hamrick on August 15, 2011 was prejudicial because the ALJ used Dr. Hamrick's testimony as the basis for not giving great weight to the opinions of Plaintiff's two treating physicians. (Doc. 16 at 10.) Plaintiff states that "when the medical expert's testimony, flowing from the *ex parte* communication is adverse to the Social Security Disability claimant, as it was in this case, it demonstrates prejudice that

mandates a reversal." (*Id.* at 13.)  Thus, Plaintiff requests reversal and remand with instructions to the Commissioner to afford Plaintiff a new hearing with a new ALJ.  (*Id.* at 14.)

Defendant responds the phone conversation between the ALJ and Dr. Hamrick, which occurred between the initial and supplemental hearings, was not an impermissible *ex parte* communication and did not prejudice Plaintiff.  (Doc. 19 at 3.)  Defendant states the phone conversation was not an impermissible *ex parte* communication because "a medical expert is obviously not a party to the proceedings, which are not adversarial."  (*Id.* at 7.)  Defendant also states that Plaintiff does not attempt to explain how Dr. Hamrick's testimony at the supplemental hearing was adverse because it "flowed" out of the phone conversation he had with the ALJ.  (*Id.*)  Further, Defendant argues "Plaintiff has no cause to complain because the upshot of the conversation between the ALJ and Dr. Hamrick was to his benefit. . . . If anything, by ordering another examination, the ALJ was fulfilling his duty to develop the medical record fully and fairly."  (*Id.* at 7-8.)

"Basic fairness in the adjudication process requires that behind-the-scenes contacts play no part in the process."  *Bd. of Trs. of the Univ. of Ark. v. Sec'y of Health & Human Servs.*, 354 F. Supp. 2d 924, 937 (E.D. Ark. 2005).  When a hearing is held before an ALJ on a claim for Social Security benefits, the ALJ's decision must be made "on the basis of evidence adduced at the hearing."  42

U.S.C. § 405(b)(1).  *See also* 20 C.F.R. § 404.953(a) (stating the ALJ must base his or her decision on "the evidence offered at the hearing or otherwise included in the record").  When an *ex parte* communication between an ALJ and a third party goes to the heart of the case "with no opportunity for counsel to cross-examine the [third party], and no assurance that the communication had no influence on the result," an error has been shown.  *Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012).  *Cf. Miller v. Astrue*, 2011 WL 4478675, *5 (E.D. Okla. Sept. 26, 2011) (finding no violation of a claimant's due process rights when the ALJ communicated with a consultative examiner to begin putting certain additional findings in his reports, which may have occurred after the examiner made the report on the claimant, and the ALJ admitted the communication had no effect on the claimant's case).

"Reversal on account of error is not automatic, but requires a determination of prejudice." *Ludwig*, 681 F.3d at 1054.  The party claiming error has the burden "to demonstrate not only the error, but also that it affected his 'substantial rights.'" *Id*.  "The court looks at each case, examining the record as a whole to determine whether the error alters the outcome of the case.  If there remains substantial evidence to support the ALJ's ultimate non-disability determination, any error is deemed harmless and does not warrant reversal." *Thiems v. Colvin*, 2013 WL

3874066, *9 (D. Or. July 25, 2013).[6] *See also Ludwig*, 681 F.3d at 1055 n.29 ("[W]here harmlessness is clear and not a 'borderline question,' remand for reconsideration is not appropriate.").

The phone conversation between the ALJ and the medical expert, which occurred on August 15, 2011, was an improper *ex parte* communication. At least one court has observed it is not "appropriate or wise for administrative law judges to speak privately . . . with medical experts who will be testifying before them." *Sanchez v. Barnhart*, 2005 WL 752220, *10 (W.D. Wis. Mar. 30, 2005). The same has been said with respect to communications between an ALJ and representatives of a Medicare contractor who would testify at a hearing before the ALJ. *See Bd. of Trs. of the Univ. of Ark.*, 354 F. Supp. 2d at 937 (stating that although the ALJ can obtain documentary evidence before the hearing, the ALJ is required to receive the testimony of all potential witnesses at the hearing). The undersigned notes that although it is generally true that *ex parte* contacts are "contacts between the adjudicator and an interested party," *William Jefferson & Co. v. Bd. of Assessment & Appeals No. 3 for Orange County*, 695 F.3d 960, (9th Cir. 2012), Defendant has not cited, and the undersigned has not found, any authority in this context supporting Defendant's position that the subject

---

[6] Some of the case-specific factors that a court should consider in determining prejudice include "an estimation of the likelihood that the result would have been different, as well as the impact of the error on the public perception of [the] proceedings." *Ludwig*, 681 F.3d at 1054 (internal quotation marks omitted).

communication could not be considered *ex parte* simply because it involved a medical expert.

Importantly, Dr. Hamrick's testimony at the supplemental hearing indicates that the subject communication was related to the substance of Plaintiff's claim for disability. Specifically, Dr. Hamrick testified that the results of Dr. Keiter's report were discussed and he recommended that Plaintiff be referred for another consultative evaluation. (Tr. 107.) Although the Report of Contact form, which is a part of the record, purports to document the ALJ's conversation with Dr. Hamrick (*see* Tr. 400), this form does not appear to memorialize the full extent of this conversation because it does not even mention that the results of Dr. Keiter's report were discussed.

Because the full content of the phone conversation is not on the record, the Court is unable to determine whether, and if so, how, the conversation influenced Dr. Hamrick's testimony at the supplemental hearing, and whether Plaintiff has been prejudiced. *See Guenther v. Comm'r of Internal Revenue*, 889 F.2d 882, 884-85 (9th Cir. 1989) (remanding the case to the tax court for an evidentiary hearing because it was unclear what the *ex parte* memorandum contained as it was not a part of the record and, thus, the court did not have sufficient knowledge to determine whether the taxpayers might have been prejudiced but it was apparent that the taxpayers did not have a meaningful opportunity to be heard on

the matter).[7]  Curiously, the ALJ did not even mention his phone conversation with Dr. Hamrick in his decision.  Although this omission may be inconsequential, the undersigned cannot assume lack of prejudice to Plaintiff particularly since the ALJ used Dr. Hamrick's testimony to discredit, *inter alia*, the treating opinions of Dr. Breeijen,[8] and to determine what weight to give the other medical opinions of record.  Based on the foregoing, the undersigned recommends that the case be remanded for a new hearing before a new ALJ.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** for a new hearing before a new ALJ.

2. If the remand results in the award of benefits, Plaintiff's attorney be

---

[7] It should be noted that regardless of the ALJ's attempt to reach Plaintiff's representative on August 15, 2011, Plaintiff's representative did not receive advance notice of the communication or an opportunity to object thereto.  These factors were considered by the Seventh Circuit on a habeas petitioner's claim challenging the district court's practice of allowing *ex parte* communications between a court reporter and the jury during jury deliberations.  *See DeGrave v. United States*, 820 F.2d 870, 871-73 (7th Cir. 1987).  That case was remanded for an evidentiary hearing to determine whether the petitioner could show cause for, and prejudice from, his procedural default in failing to raise the claim on direct appeal, where counsel did not receive prior notice of the court reporter's entry into the jury room to read testimony or an opportunity to object to the court reporter's presence in the jury room, and there was no record of what transpired in the jury room, which testimony was read, or if it was improperly emphasized.  *Id.*

[8] Dr. Breeijen completed a Mental RFC assessment on December 16, 2010, opining that Plaintiff had marked limitations in the ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.  (Tr. 554-56.)

**GRANTED**, pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until **thirty (30) days** after the date of the Commissioner's letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney's fees, and that the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, not be extended.  See In re: *Procedures for Apply for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1381(d)(2)*, Case No. 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012).

      3.    The Clerk of Court be directed to enter judgment accordingly and close the file.

      **DONE AND ENTERED** at Jacksonville, Florida, on April 21, 2014.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record