**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JAMES HILLIARD,

    Plaintiff,

-vs-                                                    Case No. 3:13-cv-870-J-34MCR

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

    Defendant.
_____/

# **O R D E R**

**THIS CAUSE** is before the Court on Magistrate Judge Monte C. Richardson's Report and Recommendation (Doc. No. 20; Report), entered on April 21, 2014. In the Report, Magistrate Judge Richardson recommends that the Commissioner's decision that the Plaintiff, James Hilliard (Hilliard), was not disabled be reversed and remanded for a new hearing before a new Administrative Law Judge (ALJ). See Report at 2. On May 5, 2014, Acting Commissioner of the Social Security Administration, Carolyn W. Colvin (Commissioner), filed objections to the Magistrate Judge's Report. See Defendant's Objections to the Magistrate Judge's Report and Recommendation (Doc. No. 21; Objections). Hilliard has not filed a response to the Objections and the time for doing so has passed. Accordingly, this matter is ripe for review.

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If no specific

objections to findings of facts are filed, the district court is not required to conduct a de novo review of those findings. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see also 28 U.S.C. § 636(b)(1). However, the district court must review legal conclusions de novo. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); United States v. Rice, No. 2:07-mc-8-FtM-29SPC, 2007 WL 1428615, at *1 (M.D. Fla. May 14, 2007).

In the Objections, the Commissioner argues that the Magistrate Judge incorrectly recommended reversal and remand of the ALJ's decision based on Hilliard's speculation that an ex parte conversation between the ALJ and the medical expert, Olin M. Hamrick, Ph.D., influenced the ALJ to order a second consultative psychological evaluation and ultimately conclude that Hilliard was not disabled. See generally Objections. The Commissioner also contends that the ex parte communication could not have prejudiced Hilliard because Dr. Hamrick testified about the conversation at the supplemental hearing and Hilliard had ample opportunity to cross-examine him. See id. at 4. Lastly, the Commissioner concludes that remand is improper regardless of whether the ex parte communication caused Hilliard any prejudice because substantial evidence supports the ALJ's decision. See id. at 6.

In Hilliard's brief opposing the Commissioner's decision to deny him disability benefits, he argued that, as a result of the communication between the ALJ and Dr. Hamrick, the ALJ failed to give the testimony of his treating physicians, Dr. Arie den Breeijen and Dr. DePaz, substantial or considerable weight as the Eleventh Circuit requires in the absence of good cause to discount those opinions. See Plaintiff's Memorandum of Law in Opposition

to the Commissioner's Decision Denying Plaintiff Disability Insurance Benefits (Doc. No. 16; Hilliard's Brief) at 12. In support of his request for reversal, Hilliard argues that it is always error for an ALJ to have <u>ex parte</u> communications with witnesses before a hearing, and when the <u>ex parte</u> communication results in testimony adverse to the claimant as in this case, "it demonstrates prejudice that mandates a reversal." <u>Id.</u> at 13.

In resolving this issue, the Magistrate Judge determined that the telephone conversation between the ALJ and Dr. Hamrick, which occurred on August 15, 2011, was an improper <u>ex parte</u> communication, even though the medical examiner was not an interested party and the communication therefore did not meet the traditional definition of <u>ex parte</u>. <u>See</u> Report at 11-12. The Magistrate Judge noted in the Report that Dr. Hamrick testified as to the subject of the communication in a supplemental hearing held on December 16, 2011—discussing the results of Hilliard's first psychological consultative exam and recommending that he undergo a second exam—and that the communication related to the substance of Hilliard's disability claim. <u>See</u> Report at 6, 12 (quoting Transcript of Social Security Disability Proceedings (Doc. Nos. 12-1 – 12-11; Tr.) at 107). Although the ALJ had made a Report of Contact form in which he acknowledged the conversation and documented it for the report, <u>see</u> Report of Contact, Tr. at 400, the Magistrate Judge concluded that the report was insufficient because it did not memorialize the full conversation or mention the fact that the ALJ discussed the results of Hilliard's first psychogical exam with Dr. Hamrick. Report at 12. "Because the full content of the phone conversation is not on the record, the Court is unable to determine whether, and if so, how, the conversation influenced Dr. Hamrick's testimony at the supplemental hearing, and

whether [Hilliard] has been prejudiced." Id. Further, the Magistrate Judge explained that while the ALJ's failure to mention the phone conversation in his decision may be inconsequential, he declined to assume that Hilliard was not prejudiced since the ALJ relied on Dr. Hamrick's testimony in part to evaluate the other medical opinions in the record and to discredit the opinion of treating physician Dr. Breeijen. Id. at 13. Accordingly, the Magistrate Judge recommended that the Court remand this case for a new hearing before a new ALJ. Id.

Ex parte communications, which the Ninth Circuit Court of Appeals has referred to as "anathema in our system of justice," can deny a claimant due process when such communications hamper the opportunity to participate in the determination of relevant issues and create unfair prejudice. See Guenther v. Comm'r of Internal Revenue, 889 F.2d 882, 884 (9th Cir. 1989). In evaluating an application for social security benefits, an ALJ is required to make a decision following a hearing based on "evidence adduced at the hearing." See 42 U.S.C. § 405(b)(1). An ALJ errs when he communicates with a third party about a matter that goes to the heart of a case without the presence of counsel and without an opportunity for counsel to cross-examine the third party if the ALJ does not provide any assurance that the ex parte communication did not influence the ALJ's decision. Ludwig v. Astrue, 681 F.3d 1047, 1053-54 (9th Cir. 2012)). However, before reversing an ALJ's decision on the basis of such an error, the Court must determine that the party claiming error has shown that the error affects his "substantial rights." See id. at 1054. That is, the Court must determine whether the alleged error alters the outcome of the case based on an examination of the record as a whole. See Thiems v. Colvin, No. 06-12-cv-00947-HZ, 2013

WL 3874066, at *9 (D. Or. July 25, 2013).

Notably, the Court's review of the Commissioner's decision to deny Hilliard's benefits "is limited to an inquiry into whether there is substantial evidence to support [the] findings . . . and whether the correct legal standards were applied." Powell v. Astrue, 250 F. App'x 960, 962 (11th Cir. 2007) (per curiam) (quoting Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)). Thus, "[i]f there remains substantial evidence to support the ALJ's ultimate non-disability determination, any error is deemed harmless and does not warrant reversal." Thiems, 2013 WL 3874066, at *9. The Eleventh Circuit Court of Appeals has explained that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is greater than "a 'mere scintilla' of support" but less than a preponderance of the evidence. See Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). In determining whether a decision is supported by substantial evidence, the "court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).

Upon review of the Report, the Court finds that the Magistrate Judge correctly stated the applicable law and the Commissioner does not contend otherwise. However, the Commissioner argues that the Magistrate Judge erred in applying the law when he recommended remand based on the possibility that the ALJ violated Hilliard's due process rights despite substantial evidence supporting the Commissioner's decision. In his brief, Hilliard argued that the ex parte communication between the ALJ and Dr. Hamrick

prejudiced the review of his application because the ALJ relied on Dr. Hamrick's testimony in giving less weight to the opinions of Hilliard's two treating physicians. See Hilliard's Brief at 10. The Magistrate Judge found that since "the Court is unable to determine whether, and if so, how, the conversation influenced Dr. Hamrick's testimony at the supplemental hearing, and whether [Hilliard] has been prejudiced," remand for a new hearing before a new ALJ was necessary. Report at 12-13. Upon review the Court concludes that the Magistrate Judge based this recommendation, in part, on authority distinguishable from the instant case in important respects: Guenther v. Comm'r of Internal Revenue, 889 F.2d 882 (9th Cir. 1989) and DeGrave v. United States, 820 F.2d 870 (7th Cir. 1987).

In both Guenther and DeGrave, the circuit courts of appeal remanded trial court decisions due to ex parte communications because the aggrieved party had no meaningful opportunity to address the issue during the trial. See Guenther, 889 F.2d at 884; DeGrave, 820 F.2d at 871. In Guenther, during a tax fraud case, counsel for the Commissioner of Internal Revenue delivered an ex parte memorandum to the trial judge that severely impugned the taxpayers' character. Guenther, 889 F.2d at 883. Although the taxpayers learned of the memorandum before the tax court judge entered his decision, they were given "no meaningful opportunity to be heard" on the matter.[1] Id. at 884. As a result the court of appeals reversed the trial court's decision in favor of the Internal Revenue Service and remanded the matter with instructions that the trial court conduct an evidentiary hearing and

---

[1] The taxpayers actually learned of the communication during the trial, but their request for a copy of it was rejected. Guenther, 889 F.2d at 883. When the taxpayers later requested an evidentiary hearing regarding the content of the communication, the trial court summarily rejected their request. Id.

-6-

make written factual findings sufficient for the court to determine whether the taxpayers were prejudiced. Id. at 885. In DeGrave, the trial judge in a criminal case permitted the court reporter to enter the jury room during deliberations in order to read the testimony of certain witnesses. DeGrave, 820 F.2d at 870. The record before the court did not disclose what conversations occurred or whether the defendant's lawyer was aware of the communications or had any opportunity to object to the practice. Id. As such, the appellate court reversed the denial of the defendant's motion under 28 U.S.C. § 2255, and remanded the matter for an evidentiary hearing to determine whether the defendant could establish actual prejudice. Id. at 872.

Thus, in both Guenther and DeGrave, the record reflected not only that an ex parte communication had occurred, but also that the complaining party was not given a meaningful opportunity to object to the communication or establish prejudice. Unlike the Guenther and DeGrave cases, in the instant case, Hilliard had notice of the communication because the ALJ spoke with his representative, the ALJ filed the Report of Contact, and Dr. Hamrick acknowledged the communication in his testimony. Moreover, Hilliard had ample opportunity to object to the communication, to fully explore the content of the communication, and to address the issue of prejudice during the supplementary hearing. Despite this, Hilliard has made no showing of actual prejudice.

The record reflects that the ALJ filed the Report of Contact reflecting his communication with Dr. Hamrick on August 6, 2011, see Tr. at 400, four months before the supplementary hearing which was held on December 16, 2011, see Tr. at 98. Further, during the supplementary hearing, Dr. Hamrick testified about the ex parte communication,

stating "I believe, Your Honor, that and my notes also indicate that you and I discussed the results of this report by telephone, and I recommended that the claimant be referred for another psychological CE." Id. at 107.  Hilliard's representative could have questioned Dr. Hamrick about this conversation and any effect it had on his opinions but did not do so. See id. at 123-128.  Nor did Hilliard object to the ex parte communication before or during the hearing or address it before the ALJ in any way.  Hilliard "cannot create a due process violation by choosing not to exercise [his] right to participate in the hearing." Barlau v. City of Northfield, 568 F. Supp. 181, 186 (D. Minn. 1983); see also Avondale Shipyards, Inc. v. Vinson, 623 F.2d 1117, 1121-22 (5th Cir. 1980)[2] ("By affording Avondale the opportunity of post-hearing cross-examination, we find that the ALJ provided an adequate means for the protection of Avondale's rights.").  Thus, even if the ALJ erred in communicating with Dr. Hamrick outside of the presence of the parties, the subsequent disclosure of the communication and the opportunity to object to it and to address and explore any potential prejudice cured any such error.

Morever, even if the opportunity to address the ex parte communication did not cure the alleged error, Hilliard has not shown the requisite prejudice. The Magistrate Judge noted that Hilliard received notification of the communication in the Report of Contact and heard testimony as to its contents, but recommended remand because the full content of the conversation was unclear. See Report at 12.  However, in seeking reversal, Hilliard is the

---

[2]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

party that bears the burden to show that the ex parte conversation prejudiced him. Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("[T]he party that 'seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted.'" (quoting Palmer v. Hoffman, 318 U.S. 109, 116 (1943))). In Ludwig, the Ninth Circuit found that the plaintiff did not carry his burden of demonstrating that an ex parte communication between an ALJ and an FBI agent involved in the case prejudiced him. Ludwig, 681 F.3d at 1054-55. The court explained that "[a]n ex parte contact can be quite egregious without being prejudicial. In the absence of actual prejudice from the error, we are required under Sanders . . . to conclude that the ex parte communication does not entitle Ludwig to a reversal." Id. at 1055.

In the instant case, Hilliard has not demonstrated the existence of prejudice. In his brief, Hilliard posits that he suffered prejudice because "when the medical expert's testimony, flowing from the ex parte communication is adverse to the Social Security Disability claimant, as it was in this case, it demonstrates prejudice that mandates a reversal." Hilliard's Brief at 13. Hilliard cites no authority for this proposition and instead relies on speculation and conclusory statements. However, as the Commissioner noted in her Objections, "[s]imply proffering an unsupported theory is not enough to satisfy [Hilliard's] burden of showing prejudice." Objections at 3.

The Magistrate Judge, in finding that the telephone conversation was an improper ex parte communication, stated "[a]t least one court has observed that it is not 'appropriate or wise for administrative law judges to speak privately . . . with medical experts who will be testifying before them.'" Report at 11 (quoting Sanchez v. Barnhart, No. 03-C-537-C, 2005

WL 752220, *10 (W.D. Wis. Mar. 30, 2005), aff'd, 467 F.3d 1081 (7th Cir. 2006)). While the Sanchez court did make such an observation, it ultimately held that the plaintiff was not entitled to remand because "there is nothing to support plaintiff's theory that the administrative law judge sought to influence [the medical expert's] testimony during that conversation." Sanchez, 2005 WL 752220 at *10. The Sanchez plaintiff alleged that the medical expert met and spoke privately with the ALJ regarding the medical record and that the plaintiff "could hear [the medical expert] and [the ALJ] engaging in a lengthy conversation that involved laughter." Id. But beyond that speculation, the plaintiff added nothing to support her argument that the ex parte communication prejudiced the medical expert against her. See id. These bare speculations did not convince the district court, and thus, the court denied the plaintiff's motion for remand. Id. at *13.

Like the Sanchez plaintiff, Hilliard has failed to provide any evidence to support a finding of prejudice. Hilliard simply relies on the fact that there was an ex parte communication with Dr. Hamrick and that the ALJ relied on Dr. Hamrick's testimony in giving less weight to the opinions of Hilliard's treating physicians. See Hilliard's Brief at 13. However, nothing in the record suggests that either Dr. Hamrick prejudiced the ALJ against Hilliard or vice-versa. Moreover, while the record does not contain exact dialogue between the two, it does include the Report of Contact form. Tr. at 400. In the Report of Contact the ALJ notes that the results of Dr. Keiter's first psychological consultative evaluation were forwarded to Dr. Hamrick and that Dr. Hamrick thought Hilliard should be sent for a second evaluation. See id. The ALJ also notes that while he tried and failed to contact Hilliard's representative that day, he, the ALJ, was able to make contact with the representative the

next day. See id. The Report of Contact does not reflect whether the communication occurred in person, telephonically or in some other manner. See id.[3] Nevertheless, during the supplementary hearing Dr. Hamrick discussed the facts of the conversation. See id. at 107. According to Dr. Hamrick, he received the results of Dr. Keiter's evaluation and found that the test was insufficient; during his testimony he explained that "looking at the fact that there were some readings to doubt to the overall credibility of the claimant and because of the influence of his girlfriend being present, I believe, Your Honor, that and my notes also indicate the you and I discussed the results of this report by telephone, and I recommended that the claimant be referred for another psychological CE." Id.

Hilliard argues that the ALJ improperly gave little weight to the opinions of his treating physicians because of his communication with Dr. Hamrick. Implicit in the argument is the premise that the ex parte telephone conversation prejudiced Dr. Hamrick against Hilliard and led directly to Dr. Hamrick questioning, or disagreeing with, the opinion of the treating medical doctor, Dr. Depaz, and the opinion of the treating psychiatrist, Dr. Breeijen, such that they should be given less weight. However, that argument is flawed for two reasons.

---

[3] The Report of Contact states:

Results from the 07/27/11 Psych Consultive Evaluaction [sic] was forwarded to Dr. Hamrick for his review. On, 08/15/11, Dr. Hamrick had the opinion the claimant should be rescheduled for a new CE since the claimant didn't seem to put forth his best effort and may have been under the influence of an unknown substance per Allison Keiter, Ph.D. Judge Thompson called claimant's rep on 08/15/11 but was unsuccessful. Judge Thompson did reach Ms. Dunmore on 08/16/11 regarding scheduling another Psych CE for Mr. Hilliard. Ms. Dunmore was asked to inform her claimant to show up to the exam with a clear mind (not intoxicated) and be ready to put forth his best effort and that his girlfriend was not to accompany him.

Tr. at 400.

First, the ALJ did not fully discount Dr. Depaz's opinions regarding Hilliard's foot problems. Instead, he stated that, "despite the conflicting evidence . . ., the undersigned has given [Hilliard] the benefit of the doubt and provided limitations in the use of foot pedal controls in the above residual functional capacity to accommodate [Hilliard's] bilateral foot condition and subjective reports of associated pain." Tr. at 29. Thus, Dr. DePaz's opinions were taken into account when the ALJ determined that Hilliard could perform light unskilled work.

Second, as to Dr. Breeijen's opinions, the bulk of Dr. Hamrick's adverse testimony, upon which the ALJ relied in giving less weight to Dr. Breeijen's opinions, was given before the ex parte communication. In the first hearing, Dr. Hamrick stated that "it appears to me, based on the record that the primary issue is the substance abuse rather than there being a basis for a primary diagnosis of any condition that would involve psychotic symptoms." Id. at 82. Additionally, Dr. Hamrick testified that there was no demonstrable basis for Dr. Breeijen's diagnosis. See id. at 91 ("No, sir there's no assessment. There's no evidence regarding his mental status . . . There's no history. There are very cursory notes."). This testimony was given before the ex parte communication, and therefore cannot serve as the basis for establishing prejudice against Hilliard. Having considered the record as a whole, the Court concludes that the ALJ would have reached the same decision in the absence of the ex parte communication, and thus reversal is not warranted as Hilliard has not shown prejudice. See Lewis, 681 F.3d at 1054-55.

Additionally, the Court determines that substantial evidence supports the ALJ's decision to rely on Dr. Hamrick's testimony and discount the testimony of Hilliard's treating

psychiatrist. The Eleventh Circuit has held that an ALJ does not err by giving less weight to the opinion of a treating physician if there is good cause to do so. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). "We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contradictory finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records." Id. (internal citations omitted). All three of these reasons supporting good cause to discount a treating physician's opinion are supported by the record in this case.

First, the record evidence does not support Dr. Breeijen's diagnosis of schizoaffective disorder. The ALJ determined that Hilliard's symptoms were more readily caused by polysubstance abuse than by schizoaffective disorder. See Tr. at 27-29. In the first hearing, the ALJ noted that Dr. Breeijen did not know of Hilliard's "longitudinal psychiatric history" and questioned the validity of Dr. Breeijen's diagnosis. Id. at 88.[4] Dr. Hamrick opined that there

---

[4] Indeed, Dr. Hamrick's testimony indicates that Dr. Breeijen's treatment of Hilliard suggests that he was unaware of his prior substance abuse issues.

> Q: . . . this Dr. Breeijen, did you see anywhere in his notes that he had an appreciation for the long, long-term abuse that the, the claimant has related to the Meridian facility in terms of formulating any diagnosis or opinion with regard to his condition?
> A: No, sir, I did not see anything in Dr. Breeijen's notes that indicated that he was aware of, or was intending to address substance abuse, and in fact the medications that he's prescribing would clearly be inconsistent with treating somebody with the kind of history of substance abuse that Mr. Hilliard has.
> He's on medications that are, that are addictive and are also often abused, still on opiates. He's also on benzodiazepines, including Klonopin, and Xanax. Both of those would be very much contra-indicated in, in an individual with, with Mr. Hilliard's history.

Tr. at 82.

was no evidence or assessment in Dr Breeijen's notes to give any indication of how Dr. Breeijen diagnosed Hilliard with schizoaffective disorder. Id. at 91. Dr. Hamrick also criticized this aberrant diagnosis in the supplementary hearing, stating, "I could not see that there was legitimate evidence for the diagnosis of schizophrenia or bipolar, or major depressive disorder because of compounding the effects of his long-term substance abuse." Id. at 105.[5]  Indeed, the record supports a contrary finding—that substance abuse rather than a psychological disorder caused Hilliard's impairments. Id. at 82 (Dr. Hamrick's testimony from the first hearing "that the primary issue is the substance abuse rather than there being a basis for a primary diagnosis of any condition that would involve psychotic symptoms.") (referring in part to treatment records from Meridian Behavioral Healthcare, Inc. in Exhibit 8F diagnosing Hilliard at one point with substance abuse psychosis).

In addition to the evidence contradicting Dr. Breeijen's opinion, there is also support in the record for the ALJ's finding that the opinion was both conclusory and inconsistent. It was conclusory because Dr. Breeijen's notes were brief and his diagnosis was based on incomplete information. See Tr. at 62-63 ("I'm looking at the notes here. They don't appear to be the notes that somebody would write down after an hour, an hour-and-a-half visit."); 91 ("So, how do we get from these notes to the RFC that he's filled out, and he wants me to believe is an accurate reflection of his current functioning? I mean, I don't see a connection."). Both the ALJ and Dr. Hamrick described the treating psychiatrist's notes as "cursory." See id. at 91 ("Q: I mean, there's absolutely little or no information about any

---

[5] While the testimony was presented after the ex parte communication it is entirely consistent with Dr. Hamrick's testimony from the first hearing.

mental status examinations. A: That's correct. There's nothing about complaint of symptoms. There's no history. These are very cursory notes."); 93 ("Q: Did Dr. Breeijen, from anything that you could see in the very cursory notes that are provided, make any effort to inquire into the claimant's substance abuse or possibility thereof? A: Nothing, nothing in the records I have support that he ever did."). Indeed, the notes demonstrate that Dr. Breeijen was unaware of Hilliard's history of polysubstance abuse. See id. at 93. Moreover, at the first hearing, the ALJ expressed concern that such a gap in knowledge of a patient's history could adversely affect a diagnosis of that patient because the diagnosis would be based on incomplete information.

> Q: Again, Dr. Hamrick, can you, can you see some sort of logical connection or relationship between what notes we do have from Dr. Breeijen, and the conclusions he comes to in the mental RFC that he's offered as part of exhibit 10F? . . . I mean if, if there would be missing evidence from the person's longitudinal history, specifically a long history of polysubstance abuse both prescription medications, as well as alcohol, cocaine, and marijuana, would that be something that a clinician might want to know in formulating a diagnosis about a particular patient that they may see?
> A: Yes.

Id. at 92-93. Finally, Dr. Hamrick found inconsistencies in the treating psychiatrist's own notes. Id. at 80. The ALJ noted this inconsistency in his decision, stating Dr. Breeijen "found [Hilliard] had marked difficulties in maintaining social functioning at Exhibit 10F/5; however, in the same exhibit, on pages 2-3, Dr. Breeijen noted [Hilliard] had only mild to moderate social limitations." Id. at 29. Given the inconsistency and conclusory nature of Dr. Breeijen's medical notes, combined with the evidence conflicting with Dr. Breeijen's diagnosis, the ALJ had good cause to give less weight to his opinion and substantial evidence supports his

decision.[6]

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Objections to the Magistrate Judge's Report and Recommendation (Doc. No. 21) are **SUSTAINED**, and the Court declines to adopt the Report and Recommendation (Doc. No. 20).

2. The Clerk is directed to enter judgment **AFFIRMING** the Commissioner's decision and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 19th day of September, 2014.

*[signature: Marcia Morales Howard]*
**MARCIA MORALES HOWARD**
United States District Judge

lc16

Copies to:

The Honorable Monte C. Richardson
United States Magistrate Judge

Counsel of Record

---

[6] Because Hilliard has not raised any additional challenges to the ALJ's decision beyond the weight given to his treating physicians, the Court will not delineate the substantial evidence supporting each of the ALJ's findings.